UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

STEPHANIE MARIE BUCHANAN,      )
                                     )
        Plaintiff,            )
                                     )
      v.                   )     Case No. 2:15 CV 5 CDP
                                     )
HARI KAPUR, M.D., et al.,         )
                                   )
        Defendants.      )

## MEMORANDUM AND ORDER

Missouri state prisoner Stephanie Marie Buchanan brings this civil rights action under 42 U.S.C. § 1983 claiming that defendant Dr. Hari Kapur, a prison doctor, was deliberately indifferent to her serious medical needs when he failed to properly diagnose and treat spinal and other injuries she suffered while incarcerated, in violation of the Eighth Amendment. Buchanan also claims that defendant Corizon, LLC,[1] promotes such deliberate indifference through its policies, customs, and procedures of ignoring medical conditions and denying treatment to inmates in order to limit costs and maximize profits. In addition to her constitutional claims of deliberate indifference, Buchanan also brings supplemental state law claims of medical negligence against both defendants. Because there are no genuine issues of material fact and the undisputed evidence shows no deliberate

---

[1] Corizon, LLC, is a private company who contracts with the State of Missouri to provide medical care to inmates.

indifference, I will grant defendants' motion for summary judgment on Buchanan's constitutional claims. I decline to exercise supplemental jurisdiction over her state law claims.

## Background[2]

Buchanan entered the Women's Eastern Reception, Diagnostic Correctional Center (WERDCC) in February 2011. At the time she entered WERDCC, Buchanan had a back condition for which she wore a back brace during periods of prolonged standing. Buchanan was required to surrender the back brace upon her incarceration; she was then assigned a wheelchair to assist her when she moved from building to building. In May 2011, Buchanan fell from her wheelchair. Believing she was injured from this fall, Buchanan sought medical treatment on June 1 for low back pain and was hospitalized in WERDCC's transitional care unit (TCU). X-rays were taken and she was released back to her housing unit three days later. Buchanan claims that she received no treatment or medication for her injury. She currently is wheelchair-bound.

In July 2012, Buchanan experienced what she believed were symptoms of a heart attack. She sought treatment but was unable to see a doctor until two days later. Buchanan claims that the doctor she saw, defendant Dr. Kapur, provided no treatment or medication for her heart attack symptoms. An EKG performed later

---

[2] This general background is provided here only to summarize the claims raised in Buchanan's most recent amended complaint (ECF 48).

in July showed that Buchanan had previously suffered a heart attack, but testing could not determine when it actually occurred. Buchanan claims that despite this confirmation of a heart attack, Dr. Kapur continued in his failure to provide medication or treatment for her cardiac injury. Buchanan also claims that Dr. Kapur threatened to take away her wheelchair if she continued to complain about having a heart attack. Buchanan continued to undergo cardiac testing until October 2012. Buchanan claims that despite abnormal results from these tests, she was never provided medication or treatment for her cardiac injury.

In October 2012, a physical therapist at WERDCC trained Buchanan on a home exercise program for her neck, stating that he had been given doctor's orders to do so. Buchanan claims she had no medical issues with her neck at that time. Buchanan claims that while she was later performing neck exercises on her own, she felt a snap in her neck and experienced severe pain. Buchanan claims that despite going to sick call and reporting this incident to Dr. Kapur, she has yet to receive any treatment or medication for this injury.

In addition to her claims regarding these specific alleged injuries, Buchanan contends generally that defendants' failure to properly treat her conditions leaves her vulnerable to additional cardiac and spinal injuries, which could be life-threatening and/or cause her to never walk again.

Defendants Kapur and Corizon move for summary judgment, arguing that

the undisputed evidence shows that Buchanan received continuous and adequate care for her medical complaints and conditions and thus that they were not deliberately indifferent to her serious medical needs. Defendants further argue that Buchanan's mere disagreement with the course of medical care does not give rise to deliberate indifference. Buchanan has not responded to the motion.[3]

## Summary Judgment Standard

When considering a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). As the moving parties, defendants must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving parties have met this burden, the nonmoving party may not rest on the allegations in her pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). A verified complaint is equivalent to an affidavit for summary judgment purposes. *Hanks v. Prachar*, 457

---

[3] Buchanan was granted extensions of time to respond to defendants' motion and was cautioned repeatedly that the final deadline of July 10, 2017, would not be extended further. In a memo filed with the Court on August 8, Buchanan averred that she mailed packages to both the Court and to defendants' counsel in response to the motion, but that both of the packages must have been lost in the mail. She further averred that she would not be able to submit additional packages until August 22. August 22 has come and gone, and nothing has been filed.

F.3d 774, 775 (8th Cir. 2006) (per curiam).

At the summary judgment stage, courts do not weigh the evidence and decide the truth of the matter, but rather determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. However, summary judgment may be appropriate "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Scott v. Harris*, 550 U.S. 372, 380 (2007). In such circumstances, the mere existence of some alleged factual dispute will not serve to defeat summary judgment; instead, the factual dispute must be "genuine." *Id.*

The evidence before the Court, including Buchanan's verified complaint, shows that defendants were not deliberately indifferent to Buchanan's serious medical needs, and no genuine issue of material fact exists for trial. For the following reasons, defendants have shown that they are entitled to judgment as a matter of law on Buchanan's claims of deliberate indifference, and I will grant their motion for summary judgment.

## Evidence Before the Court on the Motion

In 1998, several years before her incarceration, Buchanan underwent back surgery for her diagnosed conditions of advanced degenerative disc disease of the lumbar spine and spinal stenosis.[4] In April 2008, three years before her

---

[4] Defts.' Exh. C (ECF 56-4).

incarceration, Buchanan visited Washington University Orthopedics with complaints of a new onset of left-sided neck, arm, back, and leg pain. She also complained of left-sided weakness. Buchanan reported that she could walk for no more than ten minutes and had increased pain when bending forward. She reported taking anti-inflammatory and narcotic medication. It was determined that Buchanan was not a good candidate for surgery and it was recommended that she see a neurologist.[5]

When Buchanan was received into WERDCC in February 2011, she reported to medical personnel that she had chronic back pain because of a spinal injury for which she had undergone surgery. She reported that she had previously been prescribed physical therapy for her condition and was currently taking naproxen, Tylenol, and Neurontin. It was determined that Buchanan would be enrolled in the Chronic Care Clinic for her chronic back pain and she first saw a doctor in the clinic in March 2011, at which time she was prescribed Tylenol and Neurontin. Upon Buchanan's request, she was also prescribed salsalate for pain. A wheelchair was provided for her to use for long distances. Because of Buchanan's chronic condition and need for long-term care, narcotic medication could not be prescribed because of its addictive quality.[6]

---

[5] Defts.' Exh. D (ECF 56-5).
[6] Defts.' Exh. B (ECF 56-2 & 56-3) at pp. 1-13, 18, 24-26, 35; Exh. A (ECF 56-1), Kapur Decl., at para. 11.

WERDCC's medical records show that Buchanan continually visited doctors and other medical personnel since she entered WERDCC. She underwent repeated x-rays, laboratory testing, and other diagnostic testing; was referred for outside consultations; was consistently prescribed medications that were refilled and adjusted as needed; had medical restrictions placed on work and other activities; and was provided certain requested medical accommodations such as a lower bunk, placement on the first floor, and continued use of a wheelchair.[7] Buchanan admits that she saw medical personnel and/or had medical procedures done over 300 times since arriving at WERDCC.[8]

With respect to the specific claims raised in Buchanan's complaint, the evidence shows the following:

May 2011 Spinal Injury

Buchanan fell from her wheelchair on May 31, 2011. The following day, she self-declared a medical emergency, complaining that she was experiencing numbness and tingling in her left arm and leg. Examination showed weak grip strength in the left hand. No edema was noted and Buchanan was able to move all extremities. X-rays taken that same date showed cervical spondylosis at the C5-6 and C6-7 levels and degenerative disc disease at the L3-4 level, mild levorotoscoliosis, and previous interbody fusion at the L4-5 level. Upon

_____

[7] *See generally* Defts.' Exh. B.
[8] Amd. Compl. (ECF 48) at para 40.

examination, it was determined that the event was not a medical emergency, but Buchanan was admitted to TCU for observation.[9]  On June 2, Buchanan had no complaints.  She was examined by Dr. Kulkamthorn – a physician at WERDCC – and reported that she no longer had any numbness or any new symptoms, and her grip strength was the same as before the fall.  Dr. Kulkamthorn diagnosed Buchanan with a sprain of the left hand and leg and released her from TCU. Buchanan was instructed to follow up in seven days.[10]

Buchanan returned to Dr. Kulkamthorn on June 10 who noted that Buchanan's symptoms were the same as before the fall.  He diagnosed Buchanan with chronic pain of the lumbar spine and neck pain and increased her dosage of salsalate.[11]

Buchanan had other medical calls in June and July 2011 involving gastrointestinal issues, allergies, and an acute hand injury from getting her hand caught in a locker.  None of these calls involved complaints of musculoskeletal pain or other symptoms associated with the May 2011 fall.  Throughout this period, Buchanan was continued on her medications as prescribed by the Chronic Care Clinic, that is, acetaminophen and salsalate, and she continued to be authorized to use a wheelchair.[12]

---

[9] Defts.' Exh. B at pp. 50-52.
[10] *Id.* at pp. 53-54.
[11] *Id.* at p. 55.
[12] *Id.* at pp. 55-64; Exh. E (ECF 56-6).

July 2012 Cardiac Complaints

Dr. Kapur began his employment at WERDCC in March 2012 and first saw Buchanan in April 2012 in the Chronic Care Clinic.[13]

During the morning of July 5, 2012, Buchanan visited Dr. Kapur and complained of continued back pain, cervical pain, and numbness in the left arm. Dr. Kapur reviewed x-rays that had been taken in June 2012 and noted them to show no change from the previous year. He also noted Buchanan's history of lumbar surgery and determined that cervical radiculopathy was to be considered. He noted that Buchanan had been taking salsalate and Tylenol and that analgesic balm and alpha lipoic acid were recently added.[14] He instructed Buchanan to continue on her medications and referred her to orthopedic services. Dr. Bredeman, a medical administrator with Corizon, determined that an orthopedic consult was not medically necessary and recommended that Buchanan undergo a physical therapy consult instead.[15]

Later that same day, July 5, Buchanan self-declared an emergency and reported to the responding nurse that she had pain in her neck that travelled to her shoulder. Buchanan contends in her complaint that she also told the nurse that she was having severe chest pain and that she was nauseous, sweating, crying, and

---

[13] Defts.' Exh. A, Kapur Decl. at paras. 2, 6.
[14] Buchanan was also taking Zocor for her condition of hyperlipidemia that was diagnosed in June 2012. (*See* Defts.' Exh. B at p. 109.)
[15] Defts.' Exh. B at pp. 112-13.

asking for hospital care, but these additional complaints are not reflected in the medical record.  The medical record shows that Buchanan exhibited no neurological deficits, her respiration was even and non-labored, she had full range of motion, and no swelling was noted.  The nurse determined the matter to be a non-emergency event.  Buchanan made another emergency call for chest pain on July 10 and reported having pain for two months that was increasing in intensity.  She described the pain as starting at her left ear and radiating down her entire left side.  Examination showed reproducible pain upon palpation and slight swelling about the left hand, which Buchanan said was normal.  Otherwise, examination was unremarkable.  Warm compresses were applied to the affected area, and Buchanan was instructed to return if the pain worsened.[16]

Dr. Kapur examined Buchanan on July 16 in relation to her chronic back pain.  Buchanan avers in her complaint that she attempted to talk to Dr. Kapur about the chest pain she had been experiencing, but he refused to address the issue because the scheduled appointment was not for chest pain.[17]  The medical notes of this appointment do not mention chest pain.[18]

On July 30, Buchanan underwent an EKG to establish a baseline reading.  The results of the EKG were abnormal in that it showed an anteroseptal myocardial

---

[16] *Id.* at pp. 113-15.
[17] Amd. Compl. at para. 17.
[18] Defts.' Exh. B at p. 114.

infarction—age undetermined, and possible inferior ischemia.[19]  Dr. Michael
Hakala – a physician at WERDCC – ordered that Buchanan's troponin level be
checked, and Buchanan was admitted to TCU for observation.  While in TCU,
Buchanan complained of pain in her head, chest, neck, back, shoulder, and arm,
but she was observed to be in no distress and to rest quietly.  A troponin check and
recheck were both negative.  Dr. Kapur discharged Buchanan from TCU on
August 1, noting that she no longer had any complaints.  He instructed her to
continue on her current medication regimen, which included Zocor, salsalate,
acetaminophen, and alpha lipoic acid.[20]

A repeat EKG was performed on August 4 in response to Buchanan's
renewed complaints of pain.  The results of this EKG were the same as those
reported on July 30.  Buchanan's vital signs were normal, she was neurologically
intact, and her respiration was even and non-labored.  Buchanan was instructed to
follow up if her symptoms worsened.[21]  On August 10, Dr. Kapur readmitted
Buchanan to TCU to undergo an additional EKG for her ongoing complaints of
pain in her chest, neck, arm, and face.  While in TCU, Buchanan was observed to
be in no distress nor to exhibit any discomfort.  By 8:00 p.m., Buchanan reported
that she felt fine and asked what the doctor's orders were.[22]  On August 11 and 12,

---

[19] *Id.* at p. 122.
[20] *Id.* at pp. 128-29, 133-34; Exh. E.
[21] Defts.' Exh. B at pp. 134-35.
[22] *Id.* at pp. 130-33, 137.

she refused her medication, stating that it did not do her any good. She also complained of chest congestion and renewed her complaint that she had pain in her head that radiated down her arm. But she was able to wheel herself up and down the hallway for fifteen minutes with no reported chest pain.[23] On August 12, Buchanan asked to be released to her housing unit and Dr. Kapur released her the following day, noting that an EKG showed no change from the other studies and that her symptoms had improved.[24]

During a follow up appointment on August 15, Dr. Kapur referred Buchanan for an outside cardiology consultation. He instructed Buchanan to continue with her medications and to continue to use her wheelchair.[25] In her complaint, Buchanan claims that Dr. Kapur threatened to revoke authorization for her wheelchair if she continued to claim that she had a heart attack.[26]

Buchanan had two additional medical encounters in August regarding her complaints of chest pain, including a repeat EKG that showed the same results as previous studies. During follow up on September 6, Buchanan reported to Dr. Kapur that she was experiencing no new symptoms.[27]

On September 10, 2012, Buchanan underwent a cardiac stress test at St.

---

[23] *Id.* at pp. 138-143. A nurse's note also states: "Note that the complaints that this patient has is different each time you discuss this with her or a different person talks to her." *Id.* at p. 143.
[24] *Id.* at pp. 144-45.
[25] Defts.' Exh. B at pp. 149-50.
[26] Amd. Compl. at para. 24.
[27] Defts.' Exh. B at pp. 151-57, 159.

Mary's Health Center upon referral from Dr. Kapur. Dr. Conrad S. Balcer conducted the study and reported that it yielded normal results. Dr. Balcer concluded that the study indicated "a low likelihood of the presence of hemodynamically significant segmental coronary artery disease and at this time, [Buchanan] appears to be at low risk of future cardiac events."[28] Although Buchanan states in her complaint that she believes the stress test showed severe cardiac injury and poor cardiac health,[29] she has produced no evidence that conflicts with Dr. Balcer's report. Upon review of the results of this study, Dr. Kapur determined for Buchanan to continue with her current care, including her chronic care medications and planned follow up with cardiology services.[30]

On October 1, Buchanan underwent an additional cardiac consultation with Dr. Balcer, who also conducted a repeat EKG. Upon review of the test results, physical examination, and Buchanan's medical history, Dr. Balcer concluded that Buchanan's chest pain was "atypical for acute coronary syndrome and suspicious for elements of anxiety." He recommended that Buchanan's medical care concentrate on evaluating for a non-cardiac etiology of her chest pain.[31]

Buchanan visited Dr. Kapur on October 4. Noting that Buchanan's chest pain was non-cardiac in origin and that Buchanan had been cleared by cardiology,

---

[28] Defts.' Exh. F (ECF 56-7) at pp. 5-6.
[29] Amd. Compl. at para. 26.
[30] Defts.' Exh. B at pp. 160-61.
[31] Defts.' Exh. F at pp. 1-3.

he determined to refer her to physical therapy for instruction on a home exercise program to help with cervical pain and chronic low back pain.[32]

The medical record shows that Buchanan's cardiac health continued to be evaluated at WERDCC, with repeat EKGs, laboratory testing, and medication adjustments and refills. In April 2013, the Chronic Care Clinic noted Buchanan's cardiac condition to be stable and lab tests showed her to be at below-average risk; and, in October 2013, it was noted that Buchanan had been asymptomatic for a year and that her cardiac condition was stable and under good control.[33] Repeat EKGs showed no changes, and Dr. Kapur continued to review and monitor Buchanan's condition, which included adjusting Buchanan's medications to maintain control of her hypertension and lipids.

October 2012 Neck Exercises

As summarized above, medical administrator Dr. Bredeman determined in July 2012 that a physical therapy referral would be appropriate for Buchanan's complaints of back pain and cervical pain. Given Buchanan's later complaints of cardiac symptoms, Dr. Kapur determined to wait on this referral until Buchanan's cardiac complaints were resolved. Upon learning in October 2012 that Buchanan had been cleared by cardiology, Dr. Kapur referred Buchanan to physical therapy to be trained in a home exercise program for her back and neck pain. On October

---

[32] Defts.' Exh. B at p. 167.
[33] *Id.* at pp. 208, 211, 246.

16, Buchanan received such training and began participating in an independent postural stretching program.[34]

In January 2013, Buchanan reported during a nurse encounter that the physical therapy was not working and that she experienced more pain.[35]  Later that month, Buchanan complained to Dr. Kapur of an earache, cough, back pain, and chest pain, for which Dr. Kapur prescribed an expectorant and instructed that she continue with Zocor.  Buchanan made no complaints regarding neck pain to Dr. Kapur or that physical therapy aggravated her pain.[36]

Throughout 2013, Buchanan had several medical encounters with nurses and doctors, including in the Chronic Care Clinic.  None of these visits involved complaints of neck pain until November 22, 2013, at which time Buchanan complained of head and neck pain associated with headaches.  Buchanan reported it to be an "ongoing thing" that was worsening.[37]  No recent trauma was associated with the pain.  In December 2013, Dr. Johnmeyer – a physician at WERDCC – prescribed ibuprofen and acetaminophen for the pain.  Buchanan's other medications, including her chronic care acetaminophen and salsalate, had already been refilled.[38]  On December 11, Dr. Kapur adjusted Buchanan's medications in

---

[34] *Id.* at pp. 167-68.
[35] *Id.* at p. 182.
[36] Defts.' Exh. B at p. 186.
[37] *Id.* at pp. 255-56.
[38] *Id.* at pp. 257-58.

an effort to control her migraine episodes.[39]

Buchanan likewise had several medical encounters throughout 2014. Complaints of neck and jaw pain made in April 2014 were referred to a dentist and, after examination and x-rays, were determined to be related to myofascial pain syndrome. Buchanan was instructed to massage the area and apply hot and cold packs. In addition to Tylenol for pain, Buchanan was prescribed Naproxen.[40] X-rays of the cervical spine taken June 26, 2014, showed no change from the previous study taken in June 2012.[41]

On July 2, 2014, Buchanan first complained that she had neck pain as a result of physical therapy that she began in October 2012. Dr. Kapur continued Buchanan on acetaminophen for pain.[42]

## Discussion

"Deliberate indifference" to a prisoner's serious illness or injury constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97 (1976); *Gregoire v. Class,* 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs."). "Deliberate indifference has both an objective and a subjective

---

[39] *Id.* at 258-59.
[40] Defts.' Exh. B at pp. 286-87.
[41] *Id.* at pp. 292-93.
[42] *Id.* at pp. 294-96.

component." *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross,* 454 F.3d 802, 808-09 (8th Cir. 2006); *Moore v. Jackson,* 123 F.3d 1082, 1086 (8th Cir. 1997), which is one "that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) (internal citation and quotation marks omitted). Where a prisoner claims that medical treatment was unconstitutionally delayed, the objective seriousness of the medical need is measured by the effect of delay in treatment. *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). To establish this objective seriousness, the prisoner must place verifying medical evidence into the record to demonstrate that the alleged delay in treatment caused harm and had some detrimental effect. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005).

The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, her objectively serious medical need. *Grayson,* 454 F.3d at 808-09; *Moore,* 123 F.3d at 1086. To establish this component, the prisoner must show that the defendant had a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon v. Frank,* 454 F.3d 858, 862 (8th Cir. 2006). "[T]he prisoner must show more than

negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 489 (8th Cir. 2008) (internal quotation marks and citation omitted).

Here, assuming arguendo that the circumstances of Buchanan's perceived May 2011 spinal injury, July 2012 heart attack symptoms, and October 2012 neck injury demonstrated objectively serious medical needs, she has failed to show that defendants Kapur and Corizon deliberately disregarded those needs. To the contrary, the undisputed evidence shows that defendants continually addressed Buchanan's medical conditions and provided adequate care and treatment therefor. An inmate cannot create a question of fact by merely stating that she did not feel that she received adequate treatment. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

First, with respect to the alleged spinal injury that Buchanan claims she suffered because of a fall in May 2011, the medical records show that Buchanan first complained to medical personnel the day after the fall, in response to which medial officials conducted a physical examination and ordered x-rays of the spine.[43] Although it was determined after examination that her condition was not a medical emergency, Buchanan was nevertheless admitted to TCU for

_____

[43] Because Dr. Kapur began his employment at WERDCC in April 2012, he was not involved in the treatment given to Buchanan in June 2011 relating to this fall.

observation.[44]  She had no related complaints thereafter, and she was prescribed increased dosages of pain medication during follow up examination.  The medical records show that throughout this encounter and at all times since, Buchanan was continued on her medication and treatment regimen that had been implemented for her chronic pain when she arrived at WERDCC, including continued use of her wheelchair.  This undisputed evidence shows that prison medical personnel actively attended to Buchanan's complaints and needs in relation to the May 2011 fall and provided diagnostic procedures to determine the extent of a possible injury.  Buchanan has presented no evidence to indicate that the prison medical officials did not respond reasonably to her medical needs.  *Dulany*, 132 F.3d at 1240.

With respect to Buchanan's claims regarding her chest pain and perceived heart attack in July 2012, she has likewise failed to show that prison medical officials, including Dr. Kapur, acted unreasonably in addressing her medical needs.  Although Buchanan claims that the nurses responding to her emergency calls in early July 2012 failed to recognize that she was exhibiting symptoms of a heart attack, and that Dr. Kapur ignored her complaints of heart attack symptoms when he examined her in mid-July, no evidence shows that any delay in treatment for

_____

[44] Notably, the symptoms of which Buchanan complained – numbness and tingling in the left arm and leg, and weak grip strength – are the same as those documented in medical records from 2008, which was three years prior to her incarceration.

Buchanan's claimed cardiac symptoms adversely affected her condition or prognosis. Buchanan's failure to provide verifying medical evidence of an adverse effect of delayed diagnosis or treatment defeats the objective component of showing deliberate indifference.

Further, Buchanan has failed to show that defendants' subjective response to this need rose to the level of deliberate indifference. Medical records show that the responding nurses considered Buchanan's complaints to be non-emergency in nature, and Buchanan avers that they told her the pain was non-cardiac in nature. The medical records further show that Buchanan continued with her medications during that time, including Zocor. Although an EKG performed later showed evidence of a heart attack, there was no indication as to when it occurred, and troponin tests used to detect heart muscle damage from a heart attack were negative. Given her complaints, however, Buchanan was nevertheless admitted to TCU and remained there for continued observation. Later complaints of chest pain were not accompanied by any clinical symptoms of a heart attack, and Buchanan exhibited no exertional distress or other observable discomfort. Dr. Kapur arranged for an outside consultation with a cardiologist, whose diagnostic tests and examinations showed a low likelihood of significant coronary artery disease and low risk of future cardiac events. With additional testing, the cardiologist determined that Buchanan's complained-of chest pain was non-cardiac in nature.

Continued monitoring of Buchanan's cardiac condition, including additional tests and physical examinations, showed Buchanan to be at below-average risk for a cardiac event; indeed, Buchanan has remained asymptomatic after her last consultation with the cardiologist in October 2012.

The evidence shows that Dr. Kapur and other medical personnel at WERDCC attended to Buchanan's medical needs and provided diagnostic procedures and outside consultations with a cardiologist in their attempt to determine the cause of her reported chest pain. Buchanan's medical needs were not disregarded, and there is no evidence to indicate that the medical officials did not respond reasonably to her medical needs. Further, Buchanan has failed to place any verifying medical evidence in the record to show that any delay in treating her chest pain adversely affected her condition or prognosis.

Buchanan's disagreement with the manner of treatment is insufficient to show deliberate indifference "as it does not indicate an 'unnecessary and wanton infliction of pain' or treatment that is 'repugnant to the conscience of mankind.'" *Dulany*, 132 F.3d at 1241 (quoting *Estelle*, 429 U.S. at 105-06). To the extent Buchanan claims that defendants' failure to properly treat her heart condition leaves her at risk for a future, life-threatening cardiac injury, the uncontroverted evidence shows Buchanan to in fact be at below-average risk for such an event. Speculation with nothing more is not sufficient to defeat summary judgment. *Id.*

Finally, Buchanan has failed to show any deliberate indifference with respect to her claimed neck injury allegedly suffered as a result of physical therapy begun in October 2012. To the extent Buchanan claims she never had any neck issues before engaging in this therapy, I note the undisputed evidence to show that Buchanan complained of neck pain as early as 2008, and x-rays taken in 2011 showed cervical spondylosis. Buchanan complained of neck pain in July and August 2012, and Dr. Kapur questioned at that time whether Buchanan suffered from cervical radiculopathy. In light of the diagnosis, objective medical evidence, and Buchanan's treatment history (which included physical therapy), it cannot be said that the treatment ordered and rendered by defendants for Buchanan's neck pain, that is, physical therapy and pain medication, was grossly inappropriate or evidenced intentional maltreatment. *See Dulany*, 132 F.3d at 1241. Where prison officials acted reasonably in providing treatment but ultimately failed to avert harm, there is no inference of deliberate indifference. *Id.*

Moreover, there is no evidence that either Dr. Kapur or other medical officials actually knew of the injury Buchanan claims to have suffered in October 2012. Although Buchanan specifically attributes her neck pain to her October 2012 therapy, the undisputed evidence shows that she made no therapy-related complaints of neck pain until July 2014. From October 2012 through July 2014, Buchanan saw several medical providers for several issues – including continued

monitoring of her chronic pain condition – but she made no report during that period that physical therapy caused her to suffer a neck injury. There simply is no evidence that prison officials knew of a neck injury caused by physical therapy. When Buchanan complained in July 2014, Dr. Kapur continued Buchanan on her pain medication.[45] Nothing before the Court shows this to be inadequate. Nor has Buchanan placed any verifying medical evidence into the record showing that any delay in treatment affected her prognosis. Because Buchanan has presented no evidence to show that Dr. Kapur or other prison officials were aware of facts from which an inference could be drawn that she suffered a neck injury from physical therapy in October 2012, defendants are entitled to summary judgment on Buchanan's claim of deliberate indifference to a therapy-related neck injury.

Buchanan's general complaint that defendants' failure to properly treat her chronic conditions leaves her vulnerable to additional cardiac and spinal injuries are too speculative to show deliberate indifference. Nevertheless, the extensive medical record shows that Buchanan was and continues to be regularly seen at the Chronic Care Clinic for chronic pain and for cardiac care, where staff members review her medications and the course of her treatment. In between chronic care visits, Buchanan regularly sees medical personnel for related and unrelated issues. Her disagreement over the course of treatment does not raise an inference of

_____

[45] Notably, x-rays taken of the cervical spine in June 2014 showed no change from earlier, pre-October 2012 studies.

deliberate indifference, and she has failed to demonstrate that she has experienced

any harm from the treatment received or from any alleged delay in care.  *Dulany*,

132 F.3d at 1242.

Allegations of medical malpractice, inadvertent failure to provide adequate

medical care, or simple negligence do not amount to a constitutional violation.

*Estelle*, 429 U.S. at 106; *Popoalii*, 512 F.3d at 499; *Smith v. Clarke,* 458 F.3d 720,

724 (8th Cir. 2006).  Because Buchanan has failed to establish that Dr. Kapur or

other medical officials provided medical treatment that was so inappropriate as to

demonstrate a refusal to provide essential care, she has failed to establish that

defendants were deliberately indifferent to serious medical needs in violation of the

Eighth Amendment.  Nor has Buchanan shown that Corizon maintains a policy,

practice, or custom of deliberate indifference to inmates' serious medical needs by

ignoring or denying medical treatment.  I will therefore grant defendants summary

judgment on Buchanan's § 1983 claims.

Because I will dismiss all claims over which this Court has original

jurisdiction, I decline to exercise supplemental jurisdiction over Buchanan's state

law claims of medical negligence.  28 U.S.C. § 1367(c)(3).  *See also Anderson v.*

*Franklin Cnty., Mo.*, 192 F.3d 1125, 1131 (8th Cir. 1999); *American Civil Liberties*

*Union v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (when state

and federal claims are joined and all federal claims are dismissed on a motion for

summary judgment, state claims are ordinarily dismissed without prejudice);

*Willman v. Heartland Hosp. E.*, 34 F.3d 605, 613-14 (8th Cir. 1994) (same).

Accordingly,

**IT IS HEREBY ORDERED** that defendants Hari Kapur, M.D. and Corizon, LLC's Motion for Summary Judgment [55] is granted as to plaintiff Stephanie Marie Buchanan's Eighth Amendment claims of deliberate indifference to her serious medical needs, and these claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Buchanan's remaining state law claims of medical negligence are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER ORDERED** that defendants' Motion for Entry of Order Granting Motion for Summary Judgment [69], based on Buchanan's failure to respond to the motion, is denied as moot.

Judgment is entered accordingly.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of September, 2017.